HART et al. v. BOWEN.

(Circuit Court of Appeals, Fifth Circuit. April 19, 1898.)

No. 597.

1. TRIAL—ORDER OF PROOF—DISCRETION OF COURT.
   It is within the discretion of a trial court to call attention to an omission of proof after plaintiff has formally closed his case, and on request to permit the omission to then be supplied.

2. SAME—REFUSAL OF INSTRUCTIONS.
   It is not error to refuse instructions asked, based upon general legal propositions, but not upon any evidence tending to show that such propositions are applicable to the facts of the case.

3. APPEAL—ASSIGNMENT OF ERROR.
   An assignment that the court erred in entering judgment in favor of the plaintiffs against the defendants is too general to be noticed.

4. SAME—ASSIGNMENTS MUST BE SPECIFIC.
   Assignments of error are required by the rules to point out the specific ground of error relied on, and an assignment that the court erred in charging the jury that there was no evidence establishing a defense is too general.

5. PARTNERSHIP—POWERS OF SURVIVING PARTNER—SETTLEMENT OF INDEBTEDNESS TO EMPLOYE.
   For 10 years an employé worked for a partnership without the amount of his compensation having been fixed, being permitted to draw what money he needed, which was charged to his account. At the end of that time the senior partner died, the business being continued in the firm name by the surviving partner, who was a son and heir of the deceased partner, and the remaining heirs. Afterwards, on a settlement made with the surviving

partner and other of the heirs and the employé, the past salary of the latter was agreed upon, and the amount credited to his account on the books of the firm. *Held*, that such settlement was binding on the firm and the representatives of the deceased partner, unless set aside in a direct proceeding for that purpose on the ground of error, mistake, or fraud.

6. HUSBAND AND WIFE—RIGHT OF WIFE TO SUE—PARAPHERNAL PROPERTY.
   Under the law of Louisiana a wife cannot maintain an action in her own name against others than her husband, except for the purpose of recovering or protecting her paraphernal funds or property.

7 SAME—ESTOPPEL TO REQUIRE PROOF.
   Where a married woman deposits funds with a partnership as her separate paraphernal property, and they are recognized and treated as such by the firm and by the representatives of a deceased partner, her account being kept separate from her husband's, she may recover such funds in her own name, without proving their paraphernal character, defendants being estopped to deny the fact.

In Error to the Circuit Court of the United States for the Eastern District of Louisana.

This action was instituted in the circuit court on the petition of Mrs. B. W. Bowen, wife of Reuben D. Bowen, and of said Reuben D. Bowen, each citizens of the state of Texas, and therein it was averred as follows: "That the estate of E. J. Hart, deceased, now being administered in the civil district court for the parish of Orleans under the number 45,308 of the docket thereof, and the commercial firm of E. J. Hart & Co., and Mrs. Juliana Hart, widow of said deceased, Miss Mary T. Hart, a feme sole of full age, Edmund J. Hart, Mrs. Julia H. Hall, widow of Charles K. Hall, deceased, John B. Hart, W. H. Jewell, Mrs. Henrietta H. Gordon, wife of W. A. Gordon, the individual members of said firm, each and all of said defendants being citizens of the state of Louisiana, and domiciled in this city and parish, are each justly and truly indebted in solido unto petitioners in the full sum of eighteen thousand one hundred and thirty-five dollars ($18,135), with interest at the rate of six per cent. per annum, payable monthly, on ten thousand dollars from March 1, 1896, until paid, and on eight thousand one hundred and thirty-five dollars from April 1, 1896, until paid, being for $18,122.13 your petitioner Mrs. B. W. Bowen has on deposit with said firm of E. J. Hart & Co. and a balance of $12.87 to her credit on an open account with said firm. Petitioners aver that E. J. Hart, deceased, as aforesaid, was a member of said firm of E. J. Hart & Co., and a citizen of the state of Louisiana, up to the time of his death, and that said firm and the business thereof has since been carried on and conducted by the other defendants hereinbefore named; that for a number of years previous to the death of the said senior member of said firm, and to the present time, your petitioner Mrs. B. W. Bowen has kept a deposit account with the said firm upon the condition and with the agreement and stipulation that the said E. J. Hart & Co. should allow and pay her monthly interest at the rate of 6 per cent. per annum on the amounts to her credit both on her deposit and on her open account; that ever since July 27, 1895, the amount to the credit of your said petitioner Mrs. B. W. Bowen on her deposit account with said firm has been, and is now, $18,122.13, and that up to March 1, 1896, the said firm paid to her each and every month the interest due thereon as stipulated and agreed, and she was also paid by said firm the interest on eight thousand one hundred and twenty-two and $^{13}/_{100}$ dollars ($8,122.13) of her deposit credit for the month of March, 1896, and up to April 1, 1896, but she has not been paid any interest whatsoever since April 1, 1896, although the same has been frequently demanded from said firm. Further, petitioners aver that your petitioner Mrs. B. W. Bowen has a right to withdraw the said deposit, and demand a settlement from said E. J. Hart & Co., at any time, and that the full amount of said $18,135 was due and payable to her by said E. J. Hart & Co. as soon as demanded from them, and she has made due and frequent demand upon said E. J. Hart & Co. for the same, but without avail, and the said E. J. Hart & Co. still refuses and neglects to pay to petitioner any part of the amount so due to her or even the interest thereon. Further, petitioners aver that the said indebtedness of said firm belongs to your

petitioner Mrs. B. W. Bowen individually, and is her separate property." The
petition closed with a suitable prayer for judgment.    To this petition all the
defendants appeared by counsel, and filed exceptions on the ground of vague-
ness and indefiniteness, and for grounds assigned as follows: "(1) That, al-
though it is alleged in the body of the petition that the debt claimed is due to
Mrs. B. W. Bowen individually, the action is brought in the name of both R.
D. Bowen and his wife, Mrs. B. W. Bowen, and the prayer is for judgment in
favor of both said petitioners, and thus defendants are not advised who is the
real plaintiff, and in whose favor judgment is claimed.    (2) That, although it
appears on the face of the petition that Mrs. B. W. Bowen is a married woman,
and that the deposit account alleged therein was kept with her as a married
woman, yet it is alleged that the said indebtedness is her separate property,
and no fact whatever is alleged upon which this allegation is based, or which
would take this claim out of the rule and presumption of law that all property
acquired during marriage by either spouse belongs to the community of acquets
and gains subsisting between husband and wife.    (3) That in other respects
the allegations of said petition are so vague and indefinite that defendants can-
not safely answer thereunto."   On the hearing of these exceptions the court
ordered that they be "maintained so as to require the plaintiffs to amend their
petition so as to pray for judgment in the name of the wife, and thereupon the
plaintiffs were allowed to amend their petition accordingly."   No formal amend-
ment appears to have been made, but thereafter the action proceeded the same
as if the husband, Reuben D. Bowen, had been eliminated as a party from
the case.    The executors of E. J. Hart, deceased, answered with a special de-
fense to the effect that the claim sued on was not the separate property of Mrs.
B. W. Bowen, the plaintiff, but was a claim belonging to the community of
acquets and gains subsisting between said Mrs. Bowen and her husband, and as-
serting that Mrs. Bowen had no right or power to sue on said claim or stand
in judgment thereon; and generally they answered, alleging as follows: "That
prior to the death of E. J. Hart, Sr., the firm of E. J. Hart & Co. existed and
was composed of E. J. Hart, Sr., and E. J. Hart, Jr.; that at the death of E.
J. Hart, Sr., which occurred on March 8, 1895, the said firm was dissolved,
and the business thereof was continued by the surviving partner, E. J. Hart,
Jr., as liquidating partner, and for purposes of liquidation only; and that the
succession of E. J. Hart, Sr., was only bound for the debts of said firm exist-
ing at the date of his death, and for debts subsequently incurred for legitimate
purposes of liquidation or inuring to the benefit of said firm in liquidation.
That on March 8th, 1895, the death of E. J. Hart, Sr., the account of Mrs. B.
W. Bowen showed that she was a creditor of said firm only in the sum of
$5,153.74; that thereafter said account was continued on the books of the firm
in liquidation, and numerous items of debit and credit were entered thereon,
resulting in a final balance as shown by said books in favor of Mrs. B. W.
Bowen of the sum claimed in the petition herein, viz. $18,135; that with regard
to all said items (save one, which will hereafter be specially referred to) these
respondents, while not undertaking to deny that they are charges which may
be binding on the succession of E. J. Hart, yet say that it is their official right
and duty to require due proof of such liability before judgment shall be ren-
dered against said succession therefor; that the excepted item above referred
to is a credit of $10,000 entered on said account on the 27th of July, 1895, which
said credit is claimed herein as a deposit, whereas no such deposit was made,
but the same is a simple transfer to the account of Mrs. B. W. Bowen of an
alleged credit standing on the books of the firm in liquidation in favor of her
husband, R. D. Bowen, which transfer was made by order of her said husband;
and respondents deny that said R. D. Bowen was entitled to any credit what-
ever, and aver that the credit in favor of Mrs. B. W. Bowen was without con-
sideration, and was not binding on the succession of E. J. Hart.   Respondents
aver that from 1885 down to the death of E. J. Hart, R. D. Bowen had been
an employé of E. J. Hart & Co.; that prior to January, 1890, he had been em-
ployed under an agreement to pay him commission on the goods sold by him,
and that from and after January, 1890, he was employed at a fixed salary
of $150 a month; and that the aforesaid remuneration for his services was
duly and fully paid him; that from the 3d of October, 1895, the said R. D.
Bowen kept a continuous running account with the firm of E. J. Hart & Co.,

and at the death of E. J. Hart, Sr., said account showed a balance due by said R. D. Bowen of about $12,000; that after said death, as respondents are informed, said R. D. Bowen made a claim upon the liquidating partner for additional remuneration for his services during the entire term thereof from 1885 down to July, 1895; that said claim was based on noncontract of the firm of E. J. Hart & Co., and on no legal obligation of said firm; that, nevertheless, the liquidating partner, E. J. Hart, Jr., for the reasons assigned in his separate answer herein, allowed said claim, and permitted a credit of the enormous sum of $19,228.43 to be entered on the books to the credit of R. D. Bowen, thereby making him appear on said books as a creditor of said firm, whereas he was and is a large debtor; that shortly thereafter the said R. D. Bowen, who remained in the employ of the liquidator, ordered the transfer of $10,000 from his account to the account of his wife, Mrs. B. W. Bowen, and the same forms a part of the amount claimed in this suit. Now, these respondents aver that the succession of E. J. Hart is in no manner bound by the aforesaid transactions, and that the said item is not due by said succession or by the firm of E. J. Hart & Co., in liquidation."

Several of the heirs of E. J. Hart, deceased, by the same counsel, filed an answer specially denying that they had ever been members of the firm of E. J. Hart & Co., and adopting all the special defenses to the plaintiff's claim set up in the executors' answer. E. J. Hart, the surviving member of the firm of E. J. Hart & Co., and an heir to E. J. Hart, deceased, filed a separate answer, adopting all the special defenses set up by the executors, and otherwise alleged as follows: "Further specially answering, this respondent says that true it is, as set forth in the answers of the executors above referred to, that this respondent, acting solely in his capacity of liquidating partner of the firm of E. J. Hart & Co., did consent to the entry on the books of said firm of a credit in favor of R. D. Bowen of $19,228.43 on July 26, 1895; that this consent was given at the pressing solicitation of said R. D. Bowen, and upon his representations as to the value of the services which he had rendered the firm, and as to the inadequacy of the remuneration which he had received, and on his representation that respondent's father, during his life, had often indicated his purpose at some future time to make him an additional allowance for said past services, and that, had he lived, he would have done so. Respondent, at that time, was of the opinion that the services of R. D. Bowen had been inadequately remunerated, and he was aware that said Bowen had frequently importuned his father for an additional allowance, and that his father had put him off with promises that he would consider the matter, and determine about it at some future time; and, although there was no legal obligation, he then believed that, if his father had lived, he would, in a final settlement with said Bowen, have made him some additional allowance for his past services. Under these circumstances, and to put an end to Bowen's importunities, respondent consented to the entry of said credit; but both Bowen and respondent well knew that respondent was acting solely as liquidating partner, and that as such he had no power to bind the firm by creating a debt for past services, and that the validity and effect of said entry would depend upon its approval by the executors and heirs of E. J. Hart, or upon proof that it was a legal obligation of the firm, if contested by them. Respondent further says that it was well known and understood by Bowen that in making said entry respondent did not assume, or intend to assume, any separate or personal obligation therefor, but only such obligation as would result from his interest in the firm in case it should be approved by the other parties in interest, or should be maintained as a legal obligation of the firm, and respondent says that he was only a salaried partner in said firm, and had no interest therein except as one of the heirs and legatees of his father. Respondent further says that the transfer of $10,000 of said credit by order of R. D. Bowen from his account to the account of his wife did not confer upon the latter any rights which R. D. Bowen did not have, and that her right to recover to the extent of said $10,000 depends upon proof by her that the claim represented thereby was a valid and legal obligation of the firm of E. J. Hart & Co. to R. D Bowen. Respondent specially denies that he is in any manner indebted for said sum, or for any other portion of plaintiff's claim, unless the court shall find the same to be an obligation of the firm, and equally binding upon the succession

of E. J. Hart; and that he is entitled to avail himself of all the defenses which have been set up in the answer of the executors which he has hereinbefore set up and adopted as a part of his answer. Respondent further says that since the entry of the credit of $19,229.43 to the account of R. D. Bowen, he has discovered various facts and transactions of said Bowen while in the service of E. J. Hart & Co. which materially affect the value of his services, and the meritoriousness of his equitable claim for additional remuneration, and that, if he had known of these facts at the time, he would not have consented to said entry; and he further says that, while he then believed that his father, if living, would have made him some allowance on final settlement, he now believes that, if these facts had been made known to him, his father would never have done so."

Upon the issues made by these pleadings the parties went to trial before a jury, and the result was a verdict by direction of the trial judge in favor of the plaintiff and against all the defendants. The defendants, all joining, sued out this writ of error, assigning errors as follows: "(1) The court erred in reopening the case of plaintiffs after the plaintiffs had formally closed their case, and after counsel for defendants had opened the case for defendants, and in then permitting the plaintiffs to offer further evidence on the question of paraphernality of the claim of the plaintiff, upon which question no evidence had been offered by plaintiffs before they closed their case, all as fully recited in bill of exceptions No. 1, signed by the judge, and hereby referred to and made part of this assignment of errors. (2) The court erred in making the charge to the jury in refusing to make each and every one of the special charges requested by the defendants, being the twenty-three special charges stated at length in bill of exceptions No. 2, signed by the judge, and herein filed, which said bill of exceptions is hereby referred to, and made part of this assignment. (3) The court erred in stating to the jury that the evidence in the case established nothing that sustained any defense to the claim of plaintiffs, and in directing the jury to find a verdict for the plaintiffs, which action of the court is fully set forth in bill of exceptions No. 3, signed by the judge, and herein filed, which said bill of exceptions is hereby referred to, and made part of this assignment. (4) The court erred in entering judgment in favor of the plaintiffs and against these defendants."

Chas. E. Fenner, H. J. Leovy, and Guy M. Horner, for plaintiffs in error.

D. C. Mellen and J. Ward Gurley, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SWAYNE, District Judge.

PARDEE, Circuit Judge, after stating the issues and proceedings as above, delivered the opinion of the court.

The plaintiffs in error complain in their first assignment of error that the court below erred in reopening the case of the plaintiffs after they had formally closed their case, and after counsel for the defense had opened the case for the defendants, and in thereafter permitting the plaintiffs to offer further evidence. The bill of exceptions upon which this assignment is based shows the following proceeding:

"The counsel for plaintiff, after offering evidence, had formally announced that he had closed the case of plaintiff, whereupon counsel for defendant proceeded to open the case of defendant by addressing the jury, explaining the points on which he relied, and facts which he expected to prove, and, having closed his statement, was about to proceed to offer his evidence, when his honor, the judge, suspended the proceeding, and ordered the jury to retire; that, after the jury retired, his honor, the judge, addressed the counsel, and said to the counsel for the plaintiff that he had failed to offer any proof of the paraphernality of the wife's claim herein sued on, and inquired whether he desired to administer such proof; that thereupon,

86 F.—56

after some discussion, the counsel for plaintiff expressed his desire then to offer such proof, and applied to be permitted to do so; that thereupon the counsel for defendants objected to the granting of the said application, on the ground that plaintiffs had formally closed their case, and that counsel for defendants had opened the case of defendants and that plaintiffs could offer no further ·evidence, except in rebuttal of testimony which might be offered by defendants; that his honor, the judge, overruled the said objections, stating that it was a matter within his discretion; and that, if he should sustain such objections, it would furnish grounds for the granting of a new trial, and he therefore granted the application of counsel for plaintiff, and ordered them to proceed with the offering of their testimony."

We understand it to be well settled that the order in which parties shall be permitted to offer their evidence in the trial of a case before a jury is a matter within the sound discretion of the trial judge. The facts recited in the bill do not show any abuse of such sound discretion, nor any resulting injury to the plaintiffs in error.

The second assignment of error is that the court erred in charging the jury, and refusing each and every one of the 23 special charges stated at length in the bill of exceptions No. 2. The bill of exceptions No. 2 does not show any charge to the jury given by the trial judge, but does show that, after the plaintiffs and defendants had closed the case, and the same was about to be submitted to the jury, the court refused to give as special charges to the jury some 24 distinct propositions of law, many based on cited textbooks and adjudged cases, but not based on any evidence tending to show that any one of the propositions suggested was applicable to the facts in the case. It is plain that this assignment of error cannot be considered.

The fourth assignment of error complains that the court entered judgment in favor of the plaintiffs against the defendants. This assignment is too general to be noticed.

There remains the third assignment of error, which complains that the trial judge stated to the jury that the evidence in the case established nothing that sustained any defense to the claim of plaintiffs, and directed the jury to find a verdict for the plaintiffs. This assignment is not in pursuance of our rules. It is too general and indefinite; and, but for the briefs of counsel, we should be at a loss to know the specific error or errors presented for review. Sooner or later some important case that should be reversed on error will be affirmed simply because counsel will not heed the rules of this court in regard to pointing out in the assignment of errors the specific errors on which they rely. The general ruling complained of is shown by a bill of exceptions, to which is attached all the evidence adduced in the case, from an examination of which we find the material facts proved to be as follows: In July, 1885, R. D. Bowen was employed by the firm of E. J. Hart & Co., and continued with that firm, occupying different positions, until March 15, 1896. At the beginning of his employment said firm was composed of E. J. Hart, Sr., and E. J. Hart, Jr., who continued to constitute the firm until the death of Hart, Sr., in March, 1895. Up to the death of E. J. Hart, Sr., no agreement was ever made as to the amount of salary to be received by Bowen, although

many efforts were made from time to time by Mr. Bowen to have a definite understanding, and have his salary fixed. E. J. Hart, Sr., would, however, always put the matter off, saying he would arrange it later, and that Bowen could draw what money he needed. The settlement of the matter was thus continually postponed, and up to the death of Hart, Sr., Bowen's salary had never been agreed upon. After the death of Hart, Sr., Bowen, unwilling that his affairs should remain longer in this uncertain state, renewed his efforts to have his yearly salary fixed from the time he went into the employment of the firm. The business was still being conducted in the name of E. J. Hart & Co., announcement being made about two days after the death of Hart, Sr., in the public press and in a circular letter that the death of Hart, Sr., would not interrupt the firm's business, and E. J. Hart, Jr., the surviving partner, and one of the executors of his father's will (his mother and one of his sisters being co-executors), was then in charge. After repeated conferences between Bowen and E. J. Hart, surviving partners, executor, and heir, Dr. John B. Hart and Walter Jewell, also heirs, defendants herein, a settlement was made on July 26, 1895, by which Bowen was allowed for his salary from August, 1885, up to July 25, 1895, $33,950, and also $5,590.60 amount advanced by him for account of the firm, aggregating $39,540.60, which, being credited to his account, gave him a net credit on the books of the firm of about $11,000. Until the latter part of February, 1896, Bowen had no intimation that this settlement would be questioned by any one. E. J. Hart, Jr., then told him that some of his father's heirs were making complaint about the settlement. They had all known of the settlement since the early part of the fall of 1895. Before Bowen received credit for the sum allowed by this settlement his account appeared to be about $14,000 overdrawn. This was due to the fact that during the whole term of his employment he had been credited with only about $500 for some years, $600 or $700 for others, and $1,200 and $1,500 for other years, and never more than $1,800 for any year; and he had not been credited with several thousand dollars charged to his account, but which he had expended for the firm's benefit. The entries of the credits for salary were made, however, pro forma, and only for the avowed purpose of enabling the firm to balance the books and were not considered as binding upon Bowen or as fixing his salary. In order to keep the books straight, some sort of an entry had to be made, and these pro forma entries were resorted to, and Bowen was permitted to draw money as he needed it, until his salary should be fixed. For several years prior to the death of Hart, Sr., and up to the date of settlement, Bowen had been general manager of the firm, and for this period he was allowed by the settlement $4,200 a year, and it was agreed that this salary should continue, and that he was to be paid $350 a month. Bowen remained with the firm under this contract for seven and a half months; but, while he was paid and charged with that sum every month for seven months, they credited him with only $150 a month. He was sent to New York in the fall of 1895 for the purpose of borrow-

ing for the firm $55,000. To accomplish this, he was detained in New York over two months. He paid out of his own pocket all the traveling expenses of this trip, and all his expenses during his stay in New York, but E. J. Hart has refused to reimburse him, or to allow him credit therefor. Although the firm credited him with only $150 a month for seven months ($200 a month less than he was entitled to), and gave him no credit for the half of March, 1896, making a total shortage in credits due on his salary of $1,575, and the firm entered nothing to his credit for the expenses of his trip to New York, which probably exceeded $1,000 (he was not allowed under defendants' objections to prove the amount), the firm's account against him shows an indebtedness of only $2,400. Prior to the institution of this suit, Bowen, hearing that Hart claimed he was indebted to the firm in the sum of $3,000, repeatedly demanded his account from Mr. Hart, and wrote him two letters requesting the rendition of his account, stating that, if he owed the firm anything, he would pay it. He never got the account. · Hart says he has no recollection of receiving these letters, but letter-press copies of them were introduced in evidence, and the witness who delivered them testified that he left one at the firm's office, and gave the other to Mr. Hart personally at his home. In 1893, upon the solicitation of the firm, who offered to pay her 6 per cent. interest on her deposits, Mrs. Bowen, the plaintiff below, and in her own right possessed of separate property and funds, opened an account with the firm by making a deposit of $1,200. She continued from time to time to make other deposits of her own moneys, and from time to time, as she wished, drew out such sums as she needed. The firm acted as her banker, and kept her account separate and distinct from her husband's, and regularly allowed her interest on her deposits, always treating and recognizing her as the owner of these funds. When Hart, Sr., died, in March, 1895, she had to her credit $5,157.74. At this time, Bowen, according to the firm's account with him, appeared to owe $9,497.62, and he had for years appeared to be a debtor on this account. Nevertheless the firm had always paid Mrs. Bowen interest on her account. After the death of E. J. Hart, Sr., Mrs. Bowen continued to make deposits with the firm as before, and on July 25, 1895, the date of the settlement · with Bowen, the firm owed her $8,122.13. When R. D. Bowen's account was credited with the amount allowed on that settlement of July 26, 1895, he became a creditor for nearly $11,000. He at once directed the firm's cashier, Mr. Sewell, to transfer $10,000 from his own to his wife's account, which was done. The firm, through Mr. Sewell, then gave its receipts certifying that Mrs. Bowen had on deposit with the firm $18,122, upon which they agreed to pay 6 per cent. interest per annum. They paid her interest monthly on the whole of this sum up to March 1, 1896, but for March they paid interest only on $8,135, and after that time declined to pay her any interest. The executors' account was filed March 25, 1896, and accounted for the year's business after the death of E. J. Hart, Sr., and showed that, among others, they had made the following disbursements for account of the firm's business, viz.:

Bills payable, $405,040.71; expenses, salaries, and interest, etc., in conducting the business of E. J. Hart & Co., $120,899.17; paid for merchandise, $391,593.11. During the whole of this period the business of the firm was carried on in the name of E. J. Hart & Co. All the letters, papers, and documents concerning the business were signed simply, "E. J. Hart & Co.," no indication being given of liquidation. On the contrary, they insisted that they had no intention of liquidation or retiring from business. In 1876, E. J. Hart, Sr., and E. J. Hart, Jr., organized the firm of E. J. Hart & Co. The articles of co-partnership contained the following provision: "In the event of the death of either partner, the business is to be continued by the survivor."

On these facts the trial judge directed a verdict for the plaintiff below on the ground that under them the defendants had no legitimate defense, and we agree with him in this conclusion. Under the facts proven, it does not appear that on a legitimate settlement and adjustment of accounts between R. D. Bowen and the firm of E. J. Hart & Co. (the claims and demands of Mrs. Bowen taken as valid) that Bowen is legitimately indebted to the firm in any sum whatever which could be offset against the demands in this suit, even if sued for by R. D. Bowen as community property. There is no doubt, under the evidence, that the compensation for the services rendered by Bowen to the firm of E. J. Hart & Co. was undetermined during the lifetime of E. J. Hart, Sr., and was a matter to be settled and adjusted, and, when settled, was to be in excess, not only of the pro forma credits made on the books, but in excess of the amounts which Bowen was allowed and did overdraw. Bowen thus had a legitimate claim for settlement with the firm of E. J. Hart & Co., and it was competent for E. J. Hart, Jr., the surviving partner, whether he was liquidating the partnership, or carrying on the same under the original articles of partnership, or with the consent of the heirs of E. J. Hart, Sr., to settle, adjust, and compromise the claim of Bowen. There is no dispute that this settlement adjusting and compromising the matters in dispute was made. After being made and executed, as it unquestionably was, it can only be avoided and set aside in a direct action for the purpose, and on grounds of error, mistake, or fraud. Certainly it cannot be attacked and annulled in a collateral action brought by Mrs. Bowen to recover her separate property. The $10,000 transferred from the credit of R. D. Bowen to the credit of Mrs. Bowen was a perfect transfer, accepted and recognized by the firm, and, if a gift from the husband to the wife, was perfected in sufficient compliance with the provisions of the Louisiana Revised Civil Code relating to manual gifts. See Stauffer v. Morgan, 39 La. Ann. 632, 2 South. 98.

The alleged radical and fundamental error committed by the judge a quo in directing a verdict for the plaintiff, as assigned in the brief of the plaintiffs in error, was in holding that the plaintiff could recover judgment without proof of the paraphernality of the claim sued upon. The record does not show that the judge so held, and, if he did, it was unnecessary. We agree with the learned

counsel for the plaintiffs in error that under the law of Louisiana the wife in her own name cannot maintain an action against others than her husband, unless it be to recover or protect her paraphernal funds and property, and that the wife has no capacity to sue or be sued, or to stand in judgment for a community right or obligation. What doubt may have existed in our minds with regard to these propositions prior to the argument in this case has been wholly removed by the learned and exhaustive briefs on the subject, teeming with arguments and authorities, submitted by counsel for plaintiffs in error on and after the hearing in reply to the opposing counsel, who seemed to doubt. But we think that neither of these propositions controls this case. Mrs. Bowen had separate paraphernal property. It was managed and invested for her. The deposits made with the firm of E. J. Hart & Co. were made by her as of her paraphernal property. As such property, the firm of E. J. Hart & Co. received it, held it, paid interest on it, and fully acknowledged it up to about the time this suit was brought, and, so far as the evidence in this case goes, neither the firm of E. J. Hart & Co. nor any of the defendants have any legal interest or right to deny that the moneys sued for are Mrs. Bowen's separate paraphernal property. As the case shows that Mrs. Bowen claimed and deposited the moneys sued for as her paraphernal property, and as the defendants are estopped from denying the fact, we are of opinion that the paraphernality of the claim sued on was sufficiently proved to warrant the verdict directed. On the whole case, we find no reversible error, and the judgment of the circuit court is affirmed.