## UNITED STATES v. SHINGLE et al.
### No. 7975.

Circuit Court of Appeals, Ninth Circuit.

June 7, 1937.

Rehearing Denied July 19, 1937.

86

Ingram M. Stainback, U. S. Atty., and J. Frank McLaughlin and Jean Vaughn, Asst. U. S. Attys., all of Honolulu, Hawaii, and H. H. McPike, U. S. Atty., of San Francisco, Cal.

Robertson & Castle and A. G. M. Robertson, all of Honolulu, Hawaii, for appellee Campbell Estate Trustees.

Anderson, Marx, Wrenn & Jenks, Robbins B. Anderson, Heaton L. Wrenn, and Norman W. Applegarth, all of Honolulu, Hawaii, for appellee Oahu Ry. & Land Co.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

The United States, hereinafter called appellant, brought this condemnation proceeding under and pursuant to the Act of April 14, 1930, c. 149, 46 Stat. 165, which provides:

"That the Secretary of the Navy is hereby authorized to examine and appraise the value of all privately owned rights of fishery in Pearl Harbor, island of Oahu, Territory of Hawaii, lying between extreme high-water mark and the sea and in and about the entrance channel to said harbor, within [a specified area], and . . . . to make contracts for the purchase of same subject to future ratification and appropriation by Congress; or, in the event of the inability of the Secretary of the Navy to make a satisfactory contract for the voluntary purchase of the said rights of fishery, he is hereby authorized and directed, through the Attorney General, to institute and carry to completion proceedings for condemnation of said rights of fishery, the acceptance of the award in said proceedings to be subject to the future ratification and appropriation by Congress. Such condemnation proceedings shall be instituted and conducted in, and jurisdiction of said proceedings is hereby given to, the District Court of the United States for the District of Hawaii, substantially as provided in 'An Act to authorize condemnation of land for sites for public buildings, and for other purposes,' approved August 1, 1888 [c. 728, 25 Stat. 357, 40 U.S.C.A. §§ 257, 258]. . . . The Secretary of the Navy is further authorized and directed to report the proceedings hereunder to Congress."

The rights sought to be condemned in this proceeding are the privately owned rights of fishery within a designated area of approximately 2,340 acres in Pearl Harbor, this being a part of the larger area specified in the Act.

Appellees and numerous other persons who, it was alleged, had or claimed to have some interest in the rights sought to be condemned were named as respondents and were served with process. Answers were filed by appellees Robert W. Shingle, Albert N. Campbell, and John K. Clarke as trustees of the estate of James Campbell, deceased, and by appellee Oahu Railway & Land Company, hereinafter called the Railway Company.[1] The other appellees appeared and participated in the trial, but filed no answer. Default was entered against all respondents failing to appear.

At the trial below, the Railway Company was permitted, over appellant's objection, to file an amended answer in which it set up a claim for damages alleged to have been sustained by it prior to the commencement of this proceeding. These damages were alleged to have been caused by the enforcement of naval regulations which prohibited fishing in certain parts of Pearl Harbor, thereby preventing the Railway Company from exercising, within a part of the above-

---

[1] These answers raised no issue save as to the amount of compensation to be paid and the distribution thereof. Appellant's right to take by condemnation the rights sought to be condemned was not and is not questioned.

mentioned area of 2,340 acres, rights claimed by it as a lessee of the Campbell estate, which, the amended answer alleged, was the owner of the rights here sought to be condemned. The regulations referred to were alleged to have been issued by the Secretary of the Navy under and pursuant to the Act of August 22, 1912, c. 335, 37 Stat. 341 (33 U.S.C.A. § 475), which provides: "For the proper control, protection, and defense of the naval station, harbor, and entrance channel at Pearl Harbor, Territory of Hawaii, the Secretary of the Navy is authorized, empowered, and directed to adopt and prescribe suitable rules and regulations governing the navigation, movement, and anchorage of vessels of whatsoever character in the waters of Pearl Harbor, island of Oahu, Hawaiian Islands, and in the entrance channel to said harbor, and to take all necessary measures for the proper enforcement of such rules and regulations."

The case was tried by the District Court, sitting without a jury, trial by jury having been expressly waived. The court thereafter entered a judgment which condemns, for public use, all privately owned rights of fishery within the above-mentioned area of 2,340 acres, adjudges the value of said rights to be the sum of $79,000, awards said sum of $79,000 to the trustees of the Campbell estate and three other respondents, namely, Adelaide K. Akina, H. N. Kaikainahaole, and the Dowsett Company, Limited, and directs that distribution thereof be made by paying to each of the three last mentioned respondents the sum of $1 and to the trustees of the Campbell estate the sum of $78,997. The judgment also awards to the Railway Company, as damages [2] found to have been sustained by it prior to the commencement of this proceeding, the sum of $27,100.05. This appeal followed.

There are 37 assignments of error. Eleven of the assigned errors (assignments 5, 7, 10, 11, 12, 13, 21, 26, 30, 34 and 35) are not specified in appellant's brief as required by our rule 24, and are therefore disregarded.

Assignments 1, 2, 3, 4, 6, 8, 9, 14, 15, 16, 17, 18 and 19, which are printed in the margin,[3] attempt to raise questions which,

---

[2] These damages are referred to in the judgment as "compensation" for a "partial taking" of the Railway Company's leasehold interest in the condemned rights of fishery prior to the commencement of this proceeding.

[3] Assignment 1: "The court erred in denying the Government a paramount sovereign power to take without compensation in navigable waters."

Assignment 2: "The court erred in awarding a fair market value for the right to take the fish nehu without considering the effect upon such value of the exercise of a paramount, sovereign power to take without compensation, which entirely prevented the enjoyment of such right."

Assignment 3: "The court erred in awarding a fair market value for the fishery without considering the effect upon such value of the exercise, or possible exercise, of a paramount, sovereign power to take without compensation."

Assignment 4: "The court erred in holding that the proper promulgation and lawful enforcement of a paramount, sovereign power which deprived the owners of the enjoyment of fishing rights constituted a taking of such rights."

Assignment 6: "The court erred in holding that the validation or adjudication of the Hawaiian right of fishery by the konohiki [the Campbell estate] under

sections 95 and 96 of the Hawaiian Organic Act [Act of April 30, 1900, c. 339, §§ 95, 96, 31 Stat. 160 (48 U.S.C.A. §§ 506, 507)] was an adjudication in trust for the hoaainas."

Assignment 8: "The court erred in holding that the hoaainas [Adelaide K. Akina, H. N. Kaikainahaole and the Dowsett Company, Ltd.] were not required to adjudicate their claims to Hawaiian rights of fishery by Sections 95 and 96 of the Hawaiian Organic Act."

Assignment 9: "The court erred in holding that sections 95 and 96 of the Hawaiian Organic Act did not prevent one from acquiring an exclusive hoaaina right to take fish after the effective date of said act."

Assignment 14: "The court erred in holding that the adjudication under sections 95 and 96 of the Hawaiian Organic Act of the konohiki right of fishery was not an adjudication of a claim of a right to take only the fish mullet but was an adjudication of a right to take any species and all variety of fish within the fishery."

Assignment 15: "The court erred in holding that the voluntary adjudication under Sections 95 and 96 of the Hawaiian Organic Act of a claim of a right to take only one species or variety of fish did not estop the konohiki from seeking compen-

for several reasons, cannot be considered. In the first place, the rulings complained of are not in the record. These assignments are based, not on the record, but on a so-called "decision," which is printed in the transcript and occupies 37 pages thereof. Preceding it and forming part of it is a 5-page syllabus, stating, under appropriate heads, the several points of law therein decided. In this "decision" the trial judge indicates the nature of the proceeding, states the issues, reviews the evidence, discusses and decides the questions involved, cites numerous authorities in support of his conclusions, and states that judgment in conformity therewith will be signed upon presentation. Though labeled "decision," this obviously is merely the trial judge's opinion. Compare China Press v. Webb (C. C.A.9) 7 F.(2d) 581, 582; Rasmusson v. Eddy's Steam Bakery (C.C.A.9) 57 F.(2d) 27, 28; Alexander Pickering & Co. v. Chinese American Cold Storage Ass'n (C.C.A. 9) 71 F.(2d) 895, 896. Since the opinion is no part of the record, error cannot be predicated thereon. Mutual Reserve Fund Life Ass'n v. Du Bois (C.C.A.9) 85 F. 586, 589; Kelly v. United States (C.C.A.9) 84 F. (2d) 541, 542.

■ The trial court made no finding of facts other than the general finding embodied in its judgment. No special finding was requested, and none was made. The trial judge's opinion—called by him a "decision"—was not a special finding of facts within the meaning of the statute.[4] Louisiana Mutual Ins. Co. v. Tweed, 7 Wall. 44, 51, 19 L.Ed. 65; Dickinson v. Planters' Bank, 16 Wall. 250, 21 L.Ed. 278; Raimond v. Terrebonne Parish, 132 U.S. 192, 194, 10 S.Ct. 57, 33 L.Ed. 309; British Queen Mining Co. v. Baker Silver Mining Co., 139 U.S. 222, 11 S.Ct. 523, 35 L.Ed. 147; Fleischmann Construction Co. v. United States, 270 U.S. 349, 355, 46 S.Ct. 284, 287, 70 L.Ed. 624; Eastman Kodak Co. v. Gray, 292 U.S. 332, 336, 54 S.Ct. 722, 724, 78 L.Ed. 1291; Alexander Pickering & Co. v. Chinese American Cold Storage Ass'n, supra; Rasmusson v. Eddy's Steam Bakery, supra; Morrison Mill Co. v. Hartford Fire Ins. Co. (C.C.A.9) 35 F. (2d) 862, 863; Isaacs v. De Hon (C.C.A. 9) 11 F.(2d) 943, 944; China Press v. Webb, supra; Java Cocoanut Oil Co. v. Pajaro Valley National Bank (C.C.A.9) 300 F. 305, 306; Northern Idaho & Montana Power Co. v. A. L. Jordan Lumber Co. (C.C.A.9) 262 F. 765, 766.

■ This is so, notwithstanding the trial judge, here and there in his opinion, states that he "finds" such and such facts to be true,[5] and, in concluding his opinion, refers to it as "the above findings and decision." As observed by Judge Rudkin in Java Cocoanut Oil Co. v. Pajaro Valley National Bank, supra, such expressions "cannot make of the opinion something which it manifestly is not." See, also, Eastman Kodak Co. v. Gray, supra, where, although the trial judge's opinion declared that the statements of fact therein contained might be taken as findings of fact, the Supreme Court held there was no special

sation for any species and all varieties of fish within the fishery."

Assignment 16: "The court erred in awarding the konohiki compensation for the right to take any species or variety of fish except the mullet."

Assignment 17: "The court erred in awarding compensation for consequential damage and injury to the fishery."

Assignment 18: "The court erred in awarding compensation for the deprivation of the use of the fishery for years barred by the statute of limitations."

Assignment 19: "The court erred in awarding compensation for the deprivation of use in these proceedings."

[4] Section 649 of the Revised Statutes, as amended (28 U.S.C.A. § 773), provides: "Issues of fact in civil cases in any district court may be tried and determined by the court, without the intervention of a jury, whenever the parties, or their attorneys of record, agree to waive a jury by a stipulation in writing filed with the clerk or by an oral stipulation made in open court and entered in the record. The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

Section 700 of the Revised Statutes, as amended (28 U.S.C.A. § 875), provides: "When an issue of fact in any civil cause in a district court is tried and determined by the court without the intervention of a jury, according to section 649 [28 U.S.C. A. § 773], the rulings of the court in the progress of the trial of the cause, if excepted to at the time, and duly presented by a bill of exceptions, may be reviewed . . . upon a writ of error or upon appeal; and when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment."

[5] Compare China Press v. Webb, supra.

finding. Such, also, was the holding of this court in Rasmusson v. Eddy's Steam Bakery, supra, where, pending appeal, the trial court made a nunc pro tunc order adopting its "decision" as special findings of fact. Judge Wilbur, speaking for this court, said: "Waiving the jurisdictional question involved, the fact remains that the decision or opinion of the court cannot be treated as special findings in a case at law tried by the court without a jury. It has been frequently so decided."

Since there is in this case no special finding of facts, our review is limited to rulings on the pleadings and to those rulings in the progress of the trial which were excepted to at the time and are duly presented by the bill of exceptions, as required by statute.[6] Fleischmann Construction Co. v. United States, supra. See, also, Norris v. Jackson, 9 Wall. 125, 128, 19 L.Ed. 608; Miller v. Brooklyn Life Ins. Co., 12 Wall. 285, 300, 20 L.Ed. 398; Dickinson v. Planters' Bank, supra; Mercantile Mutual Ins. Co. v. Folsom, 18 Wall. 237, 248, 21 L.Ed. 827; Cooper v. Omohundro, 19 Wall. 65, 69, 22 L.Ed. 47; Springfield Fire & Marine Ins. Co. v. Sea, 21 Wall. 158, 161, 22 L. Ed. 511; Martinton v. Fairbanks, 112 U.S. 670, 673, 5 S.Ct. 321, 28 L.Ed. 862; Boardman v. Toffey, 117 U.S. 271, 272, 6 S.Ct. 734, 29 L.Ed. 898; British Queen Mining Co. v. Baker Silver Mining Co., supra; Lehnen v. Dickson, 148 U.S. 71, 73, 13 S. Ct. 481, 37 L.Ed. 373; St. Louis v. Western Union Tel. Co., 166 U.S. 388, 390, 17 S.Ct. 608, 41 L.Ed. 1044; Vicksburg, Shreveport & Pac. Ry. Co. v. Anderson-Tully Co., 256 U.S. 408, 415, 41 S.Ct. 524, 527, 65 L.Ed. 1020; Law v. United States, 266 U.S. 494, 496, 45 S.Ct. 175, 176, 69 L. Ed. 401; Arthur C. Harvey Co. v. Malley, 288 U.S. 415, 418, 53 S.Ct. 426, 427, 77 L. Ed. 866; Eastman Kodak Co. v. Gray, supra; McCaughn v. Real Estate Land Title & Trust Co., 297 U.S. 606, 608, 56 S. Ct. 604, 605, 80 L.Ed. 879; and decisions of this court cited above.

■ The rulings complained of in assignments 1, 2, 3, 4, 6, 8, 9, 14, 15, 16, 17, 18, and 19 were not rulings on the pleadings, they were not rulings in the progress of the trial, they were not excepted to, they are not presented by the bill of exceptions, and are, therefore, not subject to review.

■ Assignments 20 and 25 relate to the trial court's action in permitting the Railway Company to amend its answer by setting up the above-mentioned claim for damages. These assignments are well taken. The Railway Company had its remedy under section 24 (20) of the Judicial Code [28 U.S.C.A. § 41 (20)]; or under section 145 (1) of the Judicial Code [7] [28 U.S.C.A. § 250 (1)] but the statute under which this condemnation proceeding was brought (Act of April 14, 1930, supra) did not authorize the Railway Company to pursue that remedy in this proceeding.

■ Assignments 22, 23, 24, 32, and 33 are that the trial court erred in excluding testimony to the effect that, if appellant had the power to take without compensation the rights it was seeking to condemn, the market value of those rights would, in the opinion of the witness, be adversely affected by the existence of that power and the possibility of its exercise. Some of the excluded testimony purported to show, in dollars and cents, how much, in the opinion of the witness, the market value of the rights in question would be reduced by the possibility just mentioned. The rights in question were "privately owned rights of fishery," which, of course, were private property. Since, under the Constitution, appellant has no power to take such property without compensation, testimony regarding the supposed effect of such nonexistent power was properly excluded.

■ Assignment 27 is to the admission of testimony regarding the annual rental value of the Honouliuli Fishery, of which the 2,340 acres above referred to formed a major part. Appellant's objections were (1) that the value to be established was fair market value, not rental value, and (2) that the witness was not qualified to testify on this subject. There was no merit in these objections. Rental value is proper evidence of market value, especially where, as in this case, there is no evidence of sales. Northern Pacific Ry. Co. v. North American Tel. Co. (C.C.A.8) 230 F. 347, 352, L.R.A.1916E, 572. The qualifications of the witness were properly established.

■ Assignments 28, 29, and 31 also are to the admission of testimony. These assignments are insufficient under our rule 11,

---

[6] See footnote 4, supra.

[7] Sections 24(20) and 145(1) of the Judicial Code were derived from §§ 1 and 2 of the Act of March 3, 1887, c. 359, 24 Stat. 505, commonly known as the Tucker Act.

in that they do not set out separately and particularly the errors asserted and intended to be urged, and do not quote the full substance of the evidence the admission of which is complained of. Instead, each assignment sets out what appears to be a part of the court reporter's transcript. Each contains a long series of questions and answers, some objected to, some not, interspersed with argument and colloquies between court and counsel, the result being that no one can tell from reading the assignment which or what evidence appellant claims was erroneously admitted. These assignments are therefore disregarded.

■ Assignment 36 is that the trial court erred in denying appellant's motion for a new trial. This ruling was not assignable as error. Fairmont Glass Works v. Club Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 254, 77 L.Ed. 439.

■ Assignment 37 is that the trial court erred in rendering judgment against appellant. This is not a valid assignment of error. United States v. Ferguson (C.C.A. 2) 78 F. 103, 105; United States Shipping Board Emergency Fleet Corp. v. Drew (C.C.A.3) 288 F. 374; Hart v. Bowen (C.C.A. 5) 86 F. 877, 882; Philadelphia Casualty Co. v. Fechheimer (C.C.A.6) 220 F. 401, 409, Ann.Cas.1917D, 64; Smith v. Hopkins (C.C.A.7) 120 F. 921, 923; United States v. Atchison T. & S. F. Ry. Co. (C.C.A.8) 270 F. 1, 4.

In so far as it awards damages or compensation to appellee Oahu Railway & Land Company, the judgment is reversed. In all other respects, it is affirmed.

DENMAN, Circuit Judge (dissenting).

The authorities on which this dissent rests are given extended treatment in the dissent to the opinion and decision in United States v. John Ii Estate et al. (C.C.A.) 91 F.(2d) 93, this day decided, and which should be read first for a full understanding of the dissent.

In Kelly v. U. S., 300 U.S. 50, 57 S.Ct. 335, 81 L.Ed. 507, the Supreme Court comments on the fact that the majority opinion of this court omitted to state that the technical ruling which frustrated the consideration of the merits of the appeal, 83 F. (2d) 783, was raised ex industria by the court and had not been considered and argued by the frustrated party, 300 U.S. 50, 54, 57 S.Ct. 335, 81 L.Ed. 507.

Similarly here and in the Ii Estate Case the majority opinion fails to state the few words of special finding used by the judge and which he designates his "findings," but which the court holds are so improperly stated that they frustrate the consideration of the merits.

It is a part of the dissent that the majority opinions, in both cases, by the omission of the text of the claimed findings, which they condemn, fail to give to the appellant its right to such a statement of the matters ruled upon, as can be presented on application for certiorari, without compelling the Supreme Court to search the record. Not only is this unnecessarily embarrassing to the litigant but, in these cases, in my opinion, without due regard to the rights of the criticized District Judge and the profession.

The majority hold as not constituting special findings of the value of the four condemned rights, the following: "I therefore *find* (capitalizing at 6% a $3600 annual net rental value) that the amount of compensation to which the owners of the commercial mullet rights in this fishery are entitled is $60,000; and this sum, plus the $7500 pua value, the $10,000 nehu value and the $1500 value for the 'outside fishery' interest, brings the entire award to the aggregate sum of $79,000." (Italics supplied). (Tr. 75.)

This is preceded by the following: "The value of 'the property taken,' as shown by the *evidence* and *stipulations* in this case, is comparatively easy of ascertainment, Captain Pollock, while testifying for the *Government,* fixed the sum of $1500 as the reasonable value of that portion of the 'outside fishery' which the Government is now taking. This value is *adopted by both* the Campbell Estate Trustees and the O. R. & L. Co., and will be adopted by the Court. As to the 'inside fishery,' stipulations between the Government and the Konohikis place the value of the pua and nehu rights (subject to the Government's objection that the konohiki should be limited to the value of the tabued mullet) at $7,500 and $10,000, respectively (see stipulations of Mar. 28, and Mar. 26, 1934, reporter's transcript)." (Italics supplied.) (Tr. 72, 73.)

Between the two there is nothing but a brief discussion of probative fact as to the value of mullet, testified to by one witness.

The entire matter above described is complete in itself. It is a *separate* performance of the court's function of finding and a *separate statement* of *findings.* I cannot believe that any veneration for technicality requires our refusal to consider them as separate special findings because not in a separate paper. To describe this compact matter as findings scattered "here and there" throughout a thirty-seven page opinion, instead of quoting the few words actually used, constitutes one of the matters to which this dissent is directed.

Immediately *succeeding* it is the conclusion of law that the owner of the Honouliuli fishery is entitled to an award for the value of all the three kinds of fishing rights and is not limited to one fish or one-third of the catch. Even if the reasoning leading to this conclusion of law makes an opinion of this matter succeeding (but not a part of) the special findings, it cannot change their character as findings.

Preceding these findings are thirteen pages of the decision devoted to the disposition of the several issues raised by ten defendants other than the konohiki appellees. The *separate* disposition of the rights of these ten other litigants certainly cannot make any the less findings, the succeeding separately stated findings on another and separate issue.

Succeeding and separately stated is the disposition of an entirely different issue, the right to damages for interference *prior to* the condemnation. Surely the separate disposition of this separate issue, though containing matters of opinion, does not convert the previous separate and compact body of findings also into an opinion.

The "Summary of Award" is in the following language: "The Campbell Estate Trustees (owners of the konohiki rights) and the Oahu Railway & Land Co. (lessees of the Campbell Estate) are awarded jointly (as requested) the sum of $79,000 as representing the entire value of the Honouliuli Fishery on June 13, 1932 (when this proceeding was instituted)." (Tr. 90, 91.)

Though the sum total of the award is not succeeded by the parenthetical statement in the Ii Estate Case of the value of the several fishing rights composing it, it is preceded in the "Decision" by the same statement of the value of these rights constituting the summarization: "The Court having hereinbefore *decided* that the sum

of *$79,000 (representing 'inside fishery' values of $7500 for pua, $10,000 for nehu and $60,000 for commercial mullet;* and the *full value of that portion of the 'outside fishery' taken, at $1500) should be awarded* for the konohiki interests in the Honouliuli Fishery (same to be the subject of a joint award to the Campbell Estate Trustees and Oahu Railway & Land Co., as requested). * * *" (Tr. 79, 80.)

As suggested in the Ii Case, to hold that these findings are in such a form that the merits of the claim, that under the Hawaiian law the award should have been for but one of the fishing rights or one-third of the total catch of the three, cannot be considered, is burying the essence in the form.

However, as in the Ii Case, these findings do not stand alone. The case was argued and submitted on briefs in which the appellant United States tenders the issue on the merits before us, as follows:

"Assuming appellees Campbell Estate and Oahu Railway & Land Company entitled to compensation, they are limited to their only existing right—a Konohiki right to mullet—and the court erred in awarding to them additional values for nehu and pua." (Brief for appellant, p. 57.)

This issue is squarely met in the appellee's first reply brief, as follows: "Appellees, Campbell Estate and Oahu Railway and Land Company, are entitled to compensation for the value of the entire fishery, including mullet, pua and nehu." (Brief for appellees, p. 10.)

"The trial court correctly determined the compensation to be awarded for the condemnation of the appellees' right to mullet in the sea fishery of Honouliuli." (Brief for appellees, p. 89.)

Both chapters of the appellees' brief defend the right of the konohiki to all the fish as given by the Hawaiian law, without suggesting that the issue is not before the court, because there are no separate special findings. On the contrary, the brief states concerning the stipulation of the value of nehu and pua found by the court as at $10,000 and $7,500, respectively, that: "Stipulations which were entered into at the hearing in the court below, concerning the value of the nehu and pua rights, appear on pages 216 and 262 of the printed record." (Brief for appellees, p. 29.)

At page 97, the appellees' brief recites the findings in full, as follows: " "* * *

I therefore *find* (capitalizing at 6% a $3600 annual net rental value) that the amount of compensation to which the owners of the commercial mullet rights in this fishery are entitled is $60,000; and this sum, plus the $7500 pua value, the $10,000 nehu value and the $1500 value for the "outside fishery" interest, brings the entire award *to the aggregate sum of $79,000.'*" (Italics supplied.)

Then, instead of claiming they are not special findings, the brief states the question before this court is whether these "findings" shall be disturbed.

" * * * this Court is then confronted with the question of whether or no it will disturb the *findings* of the lower court which is the sole judge of the credibility of witnesses before it and the weight to be given their testimony. The rule in this regard on matters on appeal is that the Appellate Court will not review the *findings* of the trial court made in the face of conflicting evidence unless it appears from the record that the Court has decided against the overwhelming weight of the evidence." (Italics supplied.) (Brief for appellees, p. 98.)

As in the Ii Estate Case, the appellees filed a brief after argument, in which, for the first time, they claim that there are no special findings, but only a general finding of an indivisible total award. Strangely enough, also as in the Ii Case, they precede this contention by agreeing with the appellant as to the findings by referring each of the four amounts sum-totalled in the $79,000, to the very place in the decision of the District Court in which he uses the words "I find":

"(3) That the fair market value of the Honouliuli sea fishery condemned by the Government was $79,000. (Rec. 75, ["I find"] No. 7975) which figure is made up of the following items:

  (a) Commercial mullet rights in the inside fishery (Rec. 75) ["I find"]..........$60,000.

  (b) Value of outside Honouliuli fishery (Rec. 75) ["I find"]................ 1,500.

"(There is no dispute as to this item, both parties agreeing that the sum of $1,500.00 is the fair market value of the outside fishery.)

  (c) Pua rights (which value is stipulated to by the Government-Rec. 75, ["I find"] 262).............$ 7,500.

  (d) Nehu rights (which value is stipulated to by the Government-Rec. 75, ["I find"] 216).............10,000."

(Answer to appellant's reply brief, pp. 2, 3.)

This is in complete agreement with the statement of these facts and findings in appellant's brief, as follows:

"The court *found,* * * * that: * * *

"(b) Appellees Campbell Estate Trustees and Oahu Railway & Land Company entitled to a joint award of $79,000.00 for the konohiki rights of fishery, determined not to be restricted to mullet, computed as follows: 'outside' fishery $1500.00; 'inside' fishery $60,000.00 for mullet, $7500.00 for pua and $10,000.00 for nehu." (Brief for appellant, p. 10.)

The Supreme Court cases cited in the Ii Estate Case, holding that the findings are to be considered in connection with the "facts admitted and concessions made by the parties," and that, even if the facts are in an opinion (which the "Decision" on the konohiki issue is not), they will be considered as sustaining or not sustaining the judgment if "counsel for both parties in this court have agreed to certain parts of the opinion as containing the material facts of the case," are controlling here.

These cases are fully considered in the dissent in the Ii Estate Case, which, from the quotation of the majority ruling on page 8 of that dissent, 91 F.(2d) 93, presents the further reasons why I consider the refusal to entertain the issue of the merits on the value of the konohiki rights is a denial of justice to the United States.

I concur in the decision that the amount of the award cannot be reduced by the possibility of the government's exercise of a nonexistent power to take the several fishing rights without compensation, and that in this proceeding damages for interference with the fishing rights prior to the condemnation cannot be recovered and to the reversal of that portion of the judgment; but I dissent to the refusal to consider the merits on the issue above discussed.