# UNITED STATES *v.* PENA.

## APPEAL FROM THE COURT OF PRIVATE LAND CLAIMS.

No. 72.   Submitted October 27, 1899. — Decided December 18, 1899.

The appeal in this case having been allowed within six months after the receipt by the Attorney General of the statement of the case by the trial attorney, and the action of the trial attorney having been approved by one of the justices of the trial court, there is no sufficient reason for the motion to dismiss, this court having the power under its rules, to notice plain errors, even when not assigned.

An appeal from the Court of Private Land Claims can be allowed by one of the Associate Justices of the court.

The grant of lands, in this case, set forth at length in the opinion of the court, was a grant in severalty, and not one of a single large tract to

·several persons, to be by them held in common, or distributed among each other.

This grant, having been made after the signing of the treaty of Guadaloupe Hidalgo, it was not within the power of the alcalde to change it by directing grants to additional persons, not included in the original grant; and the whole proceeding may be ignored, except so far as it indicates those who took title under the original grant, or discloses those who were their successors in interest.

THE statement of the case is in the opinion of the court.

*Mr. Attorney General, Mr. Solicitor General* and *Mr. Matthew G. Reynolds* for appellants.

*Mr. Edward L. Bartlett* and *Mr. T. B. Catron* for appellees.

MR. JUSTICE BREWER delivered the opinion of the court.

This case comes from the Court of Private Land Claims, and the first contention of appellees, made on a motion to dismiss the appeal, is that it was not taken in time. The decree was entered December 1, 1896, and the appeal was not allowed until April 14, 1898. Section 9 of the act creating the Court of Private Land Claims, act of March 3, 1891, c. 539, 26 Stat. 854, 858, while giving to either party the right of appeal within six months from the date of the decision, also provides that on the rendition of a judgment confirming any claim it shall be the duty of the attorney of the United States to notify the Attorney General in writing of the judgment, giving a clear statement of the case and the points decided — a statement to be verified by the certificate of the presiding judge of the court; and also that if the Attorney General shall not receive such statement within sixty days next after the rendition of a judgment the right of appeal on the part of the United States shall continue to exist until six months next after the receipt of the statement. It appears in the record, from the certificate of the judge allowing the appeal, that no such statement was sent to the Attorney General until March 9, 1898, or received by him until March 25, 1898. So, within the letter of the statute, the time for an appeal on the part of the United States had not expired.

It is also insisted that it is the duty of the United States attorney to give this notice, and that, therefore, his dereliction cannot enlarge the time within which the Government must act if it wishes to appeal. Can he, it is asked, continue indefinitely the right of appeal? In the brief filed by the Government is a statement of the reasons for the delay in giving the notice, but it is unnecessary for us to enter into any examination of the matter. It is enough that it was called to the attention of one of the justices of the trial court, who has, by allowing the appeal, approved the action of the attorney. It is for the party challenging such action to show that it was wrong.

A third proposition is that no assignment of errors is annexed to the transcript, as required by sections 997 and 1012 of the Revised Statutes. But this is not sufficient to compel a dismissal of the appeal. Paragraph 4 of Rule 21 of this court provides that the court may at its option notice a plain error not assigned. *Ackley School District* v. *Hall,* 106 U. S. 428.

A final contention is that the allowance of appeal was not made by the presiding judge but by one of the associate justices of that court. But the provision of section 9 is that appeals shall be taken in the same manner and upon the same conditions as appeals from the judgments of a Circuit Court of the United States, and by section 999 of the Revised Statutes any Judge of such court has the power to act. The rule is different in cases coming from a state court. *Havnor* v. *New York,* 170 U. S. 408.

There is no sufficient reason for sustaining the motion to dismiss, and it is denied.

Coming now to the merits of the case it is unnecessary, in view of the contentions of the Government to which alone we direct our attention, to consider other than two matters, to the understanding of which a brief statement of facts is necessary. In 1836 Jose Julian Martinez and others made application to the ayuntamiento of Ojo Caliente for a tract of public land, called "the Petaca." That body declared its opinion that the grant should be made, and thereupon the governor signed this order:

" SANTA Fé, *February* 25, 1836.

" Having seen the action of the ayuntamiento of Ojo Caliente of date 22d instant, in which they say there is no objection to granting the applicant and his associates the land mentioned, the former grantees not possessing now any right herein, they having abandoned the same, the alcalde of said place will place those who now apply for the same in possession thereof in the required form and in conformity with the law on the subject, setting forth the general donation, in which shall necessarily be stated the boundaries of said possession, and without prejudice to any third party; also binding the grantees to the obligations prescribed by the laws to acquire title, for which purpose the alcalde shall take charge of the general document of distribution, which shall be for the archives, and he shall give testimonios therefrom, as may be requested of him, on payment of his corresponding fees.

" PEREZ."

In pursuance of this order the alcalde proceeded to give juridical possession, and this is the report of his action :

" For the years one thousand eight hundred and thirty-six and eight hundred and thirty-seven.

" At Santa Cruz del Ojo Caliente, jurisdiction of this name, on the twenty-fifth day of the month of March, one thousand eight hundred and thirty-six, in compliance with the decree of the civil and military governor of the Territory of New Mexico, Alvino Perez, of date February 25th of the same year, in which he directs me to place in possession the petitioners who have applied for the Petaca tract of land, and as is set forth in their petition of date 29th of January of the same year, I proceeded to distribute said land in the presence of the parties interested, giving to each one of those mentioned in the list one hundred and fifty varas in a direct line, designating to them as their boundaries on the south the entrance to the canoncito and lands of Jose Miguel Lucero, on the north the hill commonly called the Tio Ortiz Hill, on the east the creek of the aguaje of the Petaca, and on the

west the boundary of the Vallecito grant, within which limits the said new grantees were located. Of these I donated only to citizen Felipe Jaquez from the boundary of Vicente Martin to that of Eusebio Chaves, the land being a narrow strip and of little utility; thereupon I donated to citizen Manuel Lujan two small valleys, which were not measured with the line and reach to the distribution of the said canoncito, and I donated to citizen Mariano Pena two small valleys, very narrow, without varying; and, continuing, I donated to citizen Antonio Eluterrio Ortiz, in the same canoncito, a small valley, also without varying; following the same course in the said canoncito, I donated to citizen Jose Francisco Lucero a small valley, also without varying, and to Jose Antonio Lucero another small valley, the boundary thereof being on the south the mouth of the same canoncito, leaving therefor a plaza one hundred and fifty varas, and fifty for women's gardens and fifty for ingress and egress, there remaining at the mouth of the canada de la Dorada, for common watering places, one hundred and fifty varas in a direct line, which donation I made in the name of the national sovereignty, in conformity with the law on the subject, the grantees mentioned in the annexed list understanding that the pastures, forests, waters and watering places are in common, and they were further informed that he who fails to occupy and cultivate the land granted within the term of five years, in order to acquire title, the same cannot be by him sold, exchanged, nor alienated, nor will he be admitted in a new settlement; and if any should of their own accord abandon the tract, they remain informed further that they possess no right, such being the requirements of law; and being informed of and agreeing to all this, they received the accepted possession, in virtue of which they plucked up herbs, leaped, cast stones and shouted with joy, saying, God be praised, long live the nation, long live the sovereign congress and the law that governs and protects us, and other manifestations of pleasure, by virtue of which they took possession; and, that it may so appear at all times, I, under this decree, signed this grant and donation with all the authority His Excellency was pleased to confer

upon me for the purpose set forth in the above petition and expressed in said decree attached to the present grant, the witnesses being the citizens Jesus Maria Barela and Jose Maria Barela and Jose Francis Lucero, as properly made.

> "Jose Antonio Martinez.
> "Jesus Maria Barela.

"There was given to Juan de Jesus Jaquez from the boundary of Jose Gabriel Vigil to a pinabete on the north; valid        .        .        .  .    .        (Rubric)"

At the close of this follows the list referred to in the report.

What was the scope and effect of this grant? Obviously we think to give to each individual named in the list the particular tract set apart to him. It was a grant in severalty and not one of a single large tract to several persons to be by them held in common or distributed among each other. It matters not that the petition for this grant was in the name of only two or three individuals, for it was not an uncommon thing for one or more to appear as the representatives of a body or a number of persons. The language of the order of the governor seems to contemplate a grant in severalty, for it speaks of "the general donation, in which shall necessarily be stated the boundaries of said possession." The outer limits within which the grants are to be made are to be stated, and within those limits the several grantees are to have their possessions. Again, the provisions that "the alcalde shall take charge of the general document of distribution" and "give testimonios therefrom as may be requested," carries the same suggestion. The alcalde is to take charge of this general document for filing in the archives, but while holding it he is to give testimonios from it to the several parties who receive grants within the out-boundary limits.

But whatever doubts might arise from an examination of the governor's order, if that was the only document to be considered, the report of the alcalde's proceedings shows affirmatively that he distributed the lands in the presence

of the parties interested, " giving to each one one hundred and fifty varas in a direct line." He evidently understood that he was to distribute this land among certain individuals. He proceeded to do so and gave juridical possession accordingly. Whatever may be thought of his interpretation of the governor's order, the only juridical possession which is shown to have been given is juridical possession in severalty to the parties named in the list. The original petitioners were never put, so far as the record shows, in juridical possession of the entire tract, and such a grant, if it was so intended, was never made effective by any juridical possession. We think it more in consonance with justice and equity to hold, not that the grant was of an entire tract which never became operative because of a failure to give juridical possession, but that the alcalde rightfully understood it as a grant in severalty, and giving juridical possession vested in the grantees the tracts of which they were so placed in possession. *United States* v. *Santa Fé,* 165 U. S. 675; *United States* v. *Sandoval,* 167 U. S. 278; *Rio Arriba Land &c. Co.* v. *United States,* 167 U. S. 298.

While the evidence as to the possession subsequent to the action of the alcalde is not very specific or entirely satisfactory, yet we think it is a fair conclusion that the parties did go into possession and continued that possession until the cession by the treaty of Guadaloupe Hidalgo. It is very likely, as suggested, that during the war between Mexico and the United States the possession was in some respects at least interrupted, but such interruption cannot be adjudged fatal to the validity of the grant. We, therefore, are constrained to hold that this grant should be sustained as a grant in severalty to the individuals named in the list.

The other matter which requires notice arises upon these facts: The treaty of Guadaloupe Hidalgo was signed February 2, 1848, ratifications were exchanged May 30, 1848, and proclamation made July 4, 1848. By this treaty New Mexico was ceded to the United States, but for some time prior to and during that year our forces were in possession of that territory. In the month of March, 1848, these proceedings

were had. The prefect, upon application, made an order to the alcalde, of which this is a copy :

"In fulfilment of the discharge of your duty you will go to the point of La Petaca to place in possession all the individuals who are noted down in the grant of said possession, which ought to be in the archive under your charge, giving the lots which are found vacant to those persons who ask for them and who are unprovided, the equality in all the possessions, and that they pay you your fees.

"Ojo Caliente, March 20, 1848.

"SALVADOR LUCERO (Rubrica.)
"*Prefect of Rio Arriba.*

"To the Alcalde Don Vicente Jaramillo. "

In pursuance of this order the alcalde proceeded to make the further distribution, as appears from the following report:

"General list, formed at the new possession which they commonly call La Petaca, made to-day, the 27th of March, of the year of our Lord 1848, in conformity to the superior decree of the prefect, Don Salvador Lucero, where he orders me that I place in possession those citizens who justly may have died or are not present; thus it is that, having stopped at the first boundary, which consists of the plaza, upwards, accompanied by the retiring justice, Don Bernardo Valdez, and my clerk, Vicente Abilucea y Cordoba, and all the municipality of citizens, and for the exact fulfilment I stated in a loud voice that I was going to measure the land in the name of the Territory of New Mexico, and that they shall receive that concession in the name of the Constitution of the United States, etc., and that measurement to the parties placed in possession was begun by the retiring justice of the peace, Don Bernardo Valdez, of that which he had donated from the year 1843, and they are the following."

Then follows a list of names, and the report closes in these words:

"And in order that this may in all time appear, which are

required by the law, they took possession of it by the authority and in the name of the Territory of New Mexico and respecting the Constitution of the United States, and 1, the attending witness, and the retiring justice signing to-day, the day of the above date *ut supra.*

" NOTE. — The citizens placed in possession in this grant with 150 varas and with the others who may have more shall have to enjoy them in the name of the Territory of New Mexico and the Constitution of the United States, as this is the authentic disposition of the retiring and new officials, and by superior order there was given and donated to them the said possessions in the regular rule of 150 varas and in a straight line on both sides of. the stream. In order that this favor may have the force and validity which the laws cite, we sign and authenticate it with all the powers which are conferred, in order that there may be no change and that it may not be again donated by another justice, except on account of abandonment of five years, or on account of not wishing to work in the fulfilment, benefit, proper, but then through the mayordomo report will be made to this court in order that another may enjoy that which he may reject; and this donation was signed and given to-day, the 27th of March, of the year of our Lord 1848.

" JOSE VICENTE JARAMILLO, [SCROLL.]
*Justice of the Peace of the County of Rio Arriba.*
" Attending:
" VICENTE ABILUCEA. [SCROLL.]
" BERNARDO VALDEZ, *Retiring Justice.*"

In respect to this it is enough to say that in so far as it was an attempt to create new rights it was beyond the power of the officials who assumed to act. The order of the prefect has a twofold aspect. It directs the alcalde to put in possession those who were named in the original grant, and this may have been within the scope of his authority. But it also attempts to make a grant to additional persons, and this was beyond his power. *Crespin* v. *United States,* 168 U. S. 208. Neither could the alcalde make such a grant. *Hays* v. *United*

*States, ante,* 248. Indeed, it may well be doubted whether since the country was in the possession of the United States forces, and a treaty had already been signed, which was shortly thereafter ratified, for the cession of the entire Territory, any Mexican official could by new grants diminish the amount of land which was to become the property of this Government. And of course it goes without saying that no such officials had authority under the Constitution and laws of the United States to grant public lands. This whole proceeding may rightfully be ignored except so far as it indicates those who took title under the original grant, or discloses those who were their successors in interest. Further than this it has no significance.

> *The decree of the Court of Private Land Claims will be reversed, and the case remanded with instructions to enter a decree in favor of the original grantees or their successors in interest for the lands granted in severalty. It may be necessary to take further testimony for identifying such parties, and the trial court is at liberty to take such testimony.*