**UNITED STATES v. JOHN II ESTATE, Limited, et al.**

No. 8008.

Circuit Court of Appeals, Ninth Circuit.

June 7, 1937.

Rehearing Denied July 19, 1937.

Ingram M. Stainback, U. S. Atty., J. Frank McLaughlin, Sp. Asst. U. S. Atty., and Jean Vaughn, Asst. U. S. Atty., all of Honolulu, Hawaii, and H. H. McPike, U. S. Atty., of San Francisco, Cal.

Anderson, Marx, Wrenn & Jenks, Robbins B. Anderson, Heaton L. Wrenn, and Norman W. Applegarth, all of Honolulu, Hawaii, for appellee John Ii Estate, Limited.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

This is a condemnation proceeding under the Act of April 14, 1930, c. 149, 46 Stat. 165, and, except as hereafter indicated, is similar in all respects to United States v. Shingle (C.C.A.) 91 F.(2d) 85, this day decided.

The rights here sought to be condemned are the privately owned rights of fishery within designated areas in Pearl Harbor, Island of Oahu, Territory of Hawaii, these being part of the larger area specified in the act. Answers were filed by all the appellees. The answers raised no issue save

as to the amount of compensation to be paid and the distribution thereof. At the trial below, the John Ii Estate was permitted, over appellant's objection, to file an amended answer in which it set up a claim for damages similar to that set up in the amended answer of the Oahu Railway & Land Company in the Shingle Case. The trial court's judgment condemns for public use all privately owned rights of fishery within the above-mentioned areas, adjudges the value of said rights to be the sum of $90,000, awards said sum of $90,000 to the John Ii Estate and James Panai Oneha, trustee, and directs that distribution thereof be made by paying $89,999 to said estate and $1 to said trustee. The judgment also awards $34,752 to the John Ii Estate as damages found to have been sustained by it prior to the commencement of this proceeding. The government appeals.

■ There are in this case 33 assignments of error. Eleven of the assigned errors (assignments 6, 8, 10, 11, 14, 18, 19, 22, 23, 24 and 27) are not specified in appellant's brief, as required by our rule 24, and are therefore disregarded.

■ Assignments 1, 2, 3, 4, 5, 7, 9, 13, and 32 in this case are similar to assignments 1, 2, 3, 4, 6, 8, 9, 14, 15, 16, 17, 18, and 19 in the Shingle Case in that they are based, not on the record, but on the trial court's opinion, which is no part of the record. In this case, as in the Shingle Case, the trial court made no finding of facts other than the general finding embodied in its judgment. No special finding was requested, and none was made. For the reasons stated by us in the Shingle Case, the questions which these assignments attempt to raise cannot be considered.

■ Assignment 12 is that "The court erred in not sustaining [appellant's] motion to require the [John Ii Estate] to elect to take compensation for only one species or variety of fish, or, in the alternative, one-third of the entire fishery." Appellant's motion, as actually made, was "that the [John Ii Estate] be compelled to elect as to which species or variety of fish [it] chose to take, or, in the alternative, one-third of the entire catch." Assuming, without deciding, that the estate had any such right of election, appellant was not entitled to demand, nor was the trial court empowered to require, the exercise of that right in this proceeding. That right, if it existed, was one of the "privately owned rights of fishery," the condemnation of which was sought in this proceeding. The purpose of the proceeding was to condemn rights, not to compel their exercise. Appellant's motion was properly denied.

■ Assignments 15 and 16 in this case are similar to assignments 20 and 25 in the Shingle Case, in that they complain of the action of the trial court in permitting the John Ii Estate to amend its answer by setting up a claim for damages said to have been sustained by it prior to the commencement of this proceeding. Assignments 20, 21, and 25 in this case are to the admission of evidence in support of said claim for damages. For the reasons stated by us in the Shingle Case, the action of the trial court in permitting this amendment and in admitting this evidence was erroneous.

Assignment 17 in this case is similar to assignment 22 in the Shingle Case and, for the reasons there stated, is without merit.

■ Assignments 26 and 28 in this case are to the admission of evidence (Exhibits 7 to 25 inclusive) offered by appellees and objected to by appellant. These assignments do not quote the full substance of this evidence, as required by our rule 11, and, for that reason, are disregarded.

■ Assignment 29 states that the trial court erred in overruling appellant's objection to testimony which, it was stipulated in this case, a witness had given in the Shingle Case regarding the rental value of a certain fishery, the stipulation being subject to appellant's objection that the testimony was incompetent, irrelevant, and immaterial. It appears from the record, and indeed from the assignment itself, that the court did not, in fact, overrule appellant's objection, but stated that "the stipulated evidence will be received in this case subject to these objections. I'm not sure what consideration, if any, will be accorded it, but it will be in the record for analysis and check." The record does not show what consideration, if any, the trial court gave this evidence. Thus, it is seen, the ruling complained of was not actually made, and the ruling actually made is not shown to have prejudiced appellant.

Assignments 30 and 33 in this case are similar to assignments 36 and 37 in the Shingle Case and, for the reasons there stated, are not valid assignments.

Assignment 31 is that the trial court erred "in finding that the fair market value of the sea fisheries herein condemned is $90,000." The assignment does not indicate why or in what respect the finding is erroneous. It does not attempt to raise the question of the sufficiency of the evidence to support the finding. Such an attempt, if made, would be futile, (1) because no such question was raised in the trial court, and (2) because the record does not contain or purport to contain all the evidence.

In so far as it awards damages in the sum of $34,752 to the John Ii Estate, the judgment is reversed. In all other respects, it is affirmed.

DENMAN, Circuit Judge (dissenting).

This important and vigorously contested appeal is one of a series of appeals, like Kelly v. U. S., 300 U.S. 50, 54, 57 S.Ct. 335, 81 L.Ed. 507, reversing this court, 83 F.(2d) 783, in which cases this court has frustrated the consideration of the major question of the merits by the application of technical rules of procedure.

I cannot agree with my conscientious and able brethren that, complicated and archaically artificial as the rules and decisions have made federal procedure, they have so sanctified the form above the essence that in this case they compel us to deny to the United States the consideration of the merits of its appeal.

The issue is a very simple one. It is whether the Ii Estate (called . konohiki), claiming to be the owner of the several rights to take (tabu) several kinds of fish, namely, pua, nehu, and mullet, is, under the Hawaiian law, the owner of all three or the owner of only an optional right to take one kind of fish or one-third the catch of the entire three. The District Court held that the Ii Estate was entitled to all three. The United States appealed, and claims that under the Hawaiian law the estate is the owner of no more than the option to take a designated fish or one-third the catch, and that the District Court should have made its award on that basis.

The parties stipulated the value of the right to take pua to be $20,000 and to take nehu to be $10,000. The two stipulated values are specifically made by the court a part of the basis of the award. This is agreed to and relied on by the briefs of both parties. The award was for $90,000, obviously more than the value of both these. The court further states that it "finds" the mullet value "is $60,000.00, which the court will award to the Ii Estate." The sum of the three fish is $90,000. There is no finding of the value of one-third the catch.

In a single document, over the signature of the District Judge, having two headings—one called "Decision" and the other "Summary of Award," there is no other matter concerning the issue of the value of the Ii Estate's right to take all or a part of these three kinds of fish than appears in the following (segregated here into text and footnote):

"The sole question to be now determined, therefore, is:

What amount is the konohiki of the fisheries (John Ii Estate, Ltd.) entitled to as 'just compensation' for the taking of the four fisheries here sought to be condemned?

"The stipulated value of pua *rights* and of nehu *rights* [of fishery sought to be condemned in the petition] in these four fisheries is $20,000 and $10,000 respectively. * * *[1]

---

[1] Between these two paragraphs appear the following conclusion of law that the amount is not to be reduced by claim by the government of a sovereign right to take all the fish, and a brief discussion of an item of probative rather than ultimate fact as to the value of mullet:

(See stipulations of April 12 and April 11, 1934, respectively: Reporter's transcript). **These amounts will be accepted by the Court and will be awarded to** the Ii Estate notwithstanding the government's 'running objection' that said values would be materially reduced 'by reason of the power claimed by the government to take under its sovereign power without compensation', this Court having repeatedly ruled that the govern-

ment's contention just stated is without merit. U. S. v. Robinson, supra: 'Appendix'; Ii Estate v. U. S., Civil No. 147 and O. R. & L. Co., Ltd., v. U. S., Civil No. 148—'Decisions on Motions to Dismiss.'

"In arriving at the amount to be awarded as the value of the commercial mullet rights, the Court must consider the evidence of Captain Pollock, testifying for the government, and basing his result practically entirely on the rentals actually heretofore received for mullet fishing rights
/s/ W.B.L. 21,000.00
—(he arriving at a figure of $~~35,333.00~~)—
and evidence on behalf of the Ii Estate, offered through Mr. Charles Chillingworth (April 11, 1934 hearing) that the leasing value of the commercial mullet fishing-

"   *   *   *   And the Court now decides and *finds that the preponderating evidence as to commercial mullet values* is as stated by Mr. Chillingworth, to-wit: $3600.00 per year which, capitalized at 6%, is $60,000.00, which the Court *will award* to the Ii Estate *for the commercial mullet value* of the four fisheries here involved.   *   *   *

"Summary of Award
*   *   *

"The John Ii Estate, Ltd., (owner of the konohiki *rights)*, is awarded the sum of $90,000.00 *($10,000.00 as nehu value, $20,000.00 as pua value, and $60,000.00 as commercial mullet value)* as representing the fair value of the four fisheries here sought to be condemned as of June 17, 1932." (Italics supplied.) (Tr. 76, 77, 81.)

This constitutes all there is in the document having to do with the issue of the value of the several fishing rights sought to be condemned in the area of waters described.

In the document there is preceding matter disposing of several of the claims of other claimants and succeeding it is matter disposing of an entirely different issue, namely, a claim for award for interference with the fisheries prior to the condemnation.

The judgment adjudicates the value of the condemned fishery to be: "That the fair market value of the sea fisheries herein condemned to the public use is hereby fixed and determined to be the sum of Ninety Thousand Dollars ($90,000.00)." (Tr. 175.)

In its brief here appellant claims concerning the award that: "The court erred in awarding the John Ii Estate a value for *all* rights of piscary in these fisheries, and in not limiting it to its only right of piscary—a konohiki's right." (Italics supplied.) (Brief for Appellant, p. 46.)

And submits: "that the court erred in failing to hold that both before and after the Organic Act this Appellee (konohiki) had only a statutory right to tabu [take for itself or appropriate from other fishermen] *a* species of fish or in the alternative one-third of the catch. From these several errors the *composite error of the Court,*

"in awarding to this Appellee the *value* of all the rights of piscary in these fisheries in the instant case, is obvious." (Italics supplied.) (Brief for appellant, p. 54.)

Appellee's first brief squarely meets the issue and claims that under the Hawaiian law the "appellee, John Ii Estate, Limited, is entitled to compensation for the value of the *entire fishery,* including mullet, pua and nehu." (Appellee's brief, p. 9.)

Continuing concerning the claim of composite error, the Ii Estate's brief admits the several values as stipulated and found as follows:

"No court has ever held that the right of the konohiki was merely a right to tabu one species of fish, or, in the alternative, to take one-third of the catch. Any such holding would be contrary to the plain wording of the [Hawaiian] statute. *   *   *

"   *   *   *   We contend that the compensation must necessarily include the value of the nehu as well as that of the mullet and pua.   *   *   *

"The Court found in its decision that the fair value of the fisheries belonging to the appellee and condemned in these proceedings was, as of June 17, 1932, the sum of $90,000. The judgment which has been entered in this case decreed said sum to be the fair market value of said fisheries as of said date. The sum of $90,000 *is made up* of the following figures: $60,000 as the value of the mullet rights in the fisheries, $20,000 as the value of the pua rights, and $10,000 as the value of the nehu rights. The Government *stipulated* that the value of the pua rights as of June 17, 1932, was $20,000, and that the value of the nehu rights on the same date was $10,000. The sum of $60,000 as the value of the mullet rights was arrived at by capitalizing $3,600 a year at 6%.   *   *   *

---

rights for these four fisheries is ('excluding pua and nehu values') $3600.00 a year, net above taxes. As ruled in U. S. v. Robert W. Shingle, et als, supra, the rentals shown actually to have been received from the leasing of property are not conclusive as to the value thereof; such rental is merely 'a circumstance in determining actual value' which is 'over-borne by expert evidence of value furnished by one whose long familiarity with fisheries and their operation and with the value of the various fishing-rights incident thereto renders him peculiarly competent and qualified to give an expert opinion thereon.'" (Boldface supplied.) (Tr. 76, 77.)

"* * * As has already been pointed out, the parties stipulated that the value of the pua rights in the fisheries was $20,000, and that the value of the nehu rights was $10,000. The Court then had to determine the value of commercial mullet rights." (Italics supplied.) (Appellee's first brief, pp. 18, 28, 89, 90, 97.)

Continuing on page 98 it treats the finding as to mullet in the words "I find" as truly a finding, in the following language: "The trial court having *found* * * * 'the preponderating evidence as to commercial mullet values is as stated by Mr. Chilingworth', this Court is confronted then with the question as to whether or not it will disturb the *findings* of the lower court, which court is the sole judge of the credibility of witnesses before it, and the weight to be given their testimony." (Italics supplied.) (Appellee's first brief, p. 98.)

The case was argued and submitted on the briefs containing these recognitions of the stipulations and of the finding as to the value of mullet. Further briefs were allowed, and the United States' brief continued the argument concerning the "composite" award, admitted and described as for the stipulated value of pua and nehu and the "I find" value of mullet. Then the Ii Estate filed its last brief, for the first time claiming that there are no special findings and that the award, with its parenthetical enumeration of items, is a general finding.

The claim is, strangely enough, preceded by the following statement of what its previous brief had admitted were findings:

"That the fair market value of the sea fisheries belonging to the John Ii Estate, Limited, was $90,000. (Rec. 81, No. 8008), [where the court's 'Award' of $90,000 is succeeded by the parenthetical statement of the [three items of value of fishing rights which make up the total] which figure is made up of the following items:

"(a) Commercial mullet rights (Rec. 81)—$60,000.

"(b) Pua rights (which value is stipulated to by the Government, Rec. 81, 322)—$20,000.

"(c) Nehu rights (which value is stipulated to by the Government, Rec. 81, 252)—$10,000."

(Appellee's "Answer to Appellant's Reply Brief," p. 3.)

We are not in the slightest way embarrassed in discovering what the issue on the merits here is by any condition of the record. If, as it is claimed by the United States, it be error to make a "composite" award of the value of the rights to take each of the three species of fish, the language of the award does show a composite error of the court in awarding to this appellee the value of all the rights of piscary in these fisheries. The language is plain: "The John Ii Estate, Ltd., (owner of the konohiki *rights), is awarded* the sum of $90,000 ($10,000.00 as nehu value, $20,000.00 as pua value and $60,000.00 as commercial mullet value). * * *" (Italics supplied.)

If the award of "$90,000 ($10,000.00 as nehu value, $20,000.00 as pua value, and $60,000.00 as commercial mullet value)" *stood alone,* any ambiguity of interpretation as to the parenthetical particularization of the three specific items making the total would be resolved by the agreement of the briefs *of both the opposing parties* that the $90,000 was a total of the three. When we consider the specific acceptance by the court of the two stipulated values and the words "I find" as to the mullet value, and appellee agreeing that the separate mullet was "found," it is submitted that even the schoolmen of the Middle Ages would find it difficult to strain from formal logic a reason why here was no more than a general finding of an indivisible total.

The majority hold concerning the court's acceptance of the stipulated values of pua and nehu the words "I find" as to the value of mullet and the aggregate of $90,000 followed by the items of the three fish, that "* * * the trial court made no finding of facts other than the *general findings* embodied in its judgment. No special finding was requested, and *none was made."* (Italics supplied.)

The court supports its holding by referring to the large number of cases cited in U. S. v. Shingle (C.C.A.) 91 F.(2d) 85 this day decided, in which, unlike this case, the amount stated in the award is a single figure and not indicated as a composite total of the values of three fish by stating them immediately thereafter. Concerning these cited cases I have been unable to discover:

(1) Any case, where a document signed by a judge, and *not called an opinion,* in which stipulations are accepted as a

basis of an award and the words "I find" are used to find value and nothing else but one conclusion of law and one item of probative fact is mentioned, in which the document has been held to be solely an opinion, and that it cannot be deemed to make the findings so stated.

(2) Any case where the award is to the owner of "rights" (plural) and its sum total is followed by an enumeration of the value of each of three rights, whose separate values aggregates the total in which the award is held to be a general finding and not a grouping of findings of three valuations of three separate rights.

(3) Any case where the adverse parties admit the total is a composite and argue the question whether, under the law, it should be for the total or for the lesser amount of one of the items or a third of the total.

On the contrary, as to (1) the Supreme Court holds that findings do not cease to have that character because there are intermingled conclusions of law or probative matter in O'Reilly v. Campbell, 116 U.S. 418, 420, 421, 6 S.Ct. 421, 422, 29 L. Ed. 669: "As to the findings, it is true they are not drawn with skill or precision; they are loose and somewhat confused. Facts and conclusions of law are sometimes mingled together contrary to the direction of the statute, creating the impression that the findings were prepared under the pressure of other duties, and did not receive the necessary care and attention. *But findings are not to be construed with the strictness of special pleadings. It is sufficient if from them all, taken together with the pleadings, we can see enough upon a fair construction to justify the judgment of the court, notwithstanding their want of precision and the occasional intermixture of matters of fact and conclusions of law.*" (Italics supplied.)

As to (3) the Supreme Court holds that the findings may be construed with a consideration of the facts admitted and concessions made by the parties. That is to say, even if it *stood alone,* the finding of the amount of the award, i. e.: "The John Ii Estate, Ltd., * * * is awarded the sum of $90,000 ($10,000.00 as nehu value, $20,-000.00 as pua value and $60,000.00 as commercial mullet value)," is to be considered with "the facts admitted and the concessions made by the parties" appellee, as follows: " * * * The sum of $90,000 is made up of the following figures: $60,000

as the value of the mullet rights in the fisheries, $20,000 as the value of the pua rights, and $10,000 as the value of the nehu rights. The Government stipulated that the value of the pua rights as of June 17, 1932, was $20,000, and that the value of the nehu rights on the same date was $10,000. The sum of $60,000 as the value of the mullet rights was arrived at by capitalizing $3,600 a year at 6%." (Appellee's first brief, p. 90.)

The Supreme Court recognizes this common sense principle in holding: *"In its brief,* defendant contends that the plaintiff was bound by the contract to weld checks disclosed by machining, *and the plaintiff so construes the contract. The facts admitted and the concessions made by the parties may be considered with the findings of fact made by the district court.* This is not inconsistent with the rule stated in Crocker v. United States, 240 U.S. 74, 78, 36 S.Ct. 245, 60 L.Ed. 533, restricting our inquiry to a consideration of the case on the findings. See Ackerlind v. U. S., 240 U.S. 531, 535, 36 S.Ct. 438, 60 L.Ed. 783." (Italics supplied.) Reading Steel Casting Co. v. U. S., 268 U.S. 186, 188, 45 S.Ct. 469, 69 L.Ed. 907.

However, the findings of the total of $90,000 with the accompanying items adding to the total do not stand alone. They are preceded by the finding of the stipulations of the value of nehu and pua and the "I find" of the value of mullet. We have shown that they are not contained in an opinion but, assuming that they are in what is technically an opinion the parties have agreed that these three items contain the material facts of the case and treat them as facts found by the court. In such a situation the court will consider whether, as a matter of law, they awarded a total of $90,000 improperly, includes too many kind of fish, or is erroneous because not computed on the value of one-third the catch.

The case of Louisiana Mut. Insurance Co. v. Tweed, 7 Wall. (74 U.S.) 44, 51, 19 L.Ed. 65, seems identical with the case at bar. It was at law. The parties agreed that the opinion truly stated certain facts, just as here their briefs agree on the facts as stated in the document the majority call an opinion. The court considered the question whether these facts, so agreed to be found, supported the judgment, holding:

"We are asked in the present case to accept the opinion of the court below as

a sufficient finding of the facts within the statute, and within the general rule on this subject. But with no aid outside the record we cannot do this. The opinion only recites some parts of the testimony by way of comment in support of the judgment, and is liable to the objection often referred to in this court, that it states the evidence *and not the facts as found from that evidence.* Besides, it does not profess to be a statement of facts, but is very correctly called in the transcript, 'reasons for judgment.'

"*But the counsel for both parties in this court have agreed to certain parts of that opinion as containing the material facts of the case, and to treat them here as facts found by the court; and inasmuch as they could have made such an agreement in the court below, we have concluded to act upon it here as if it had been so made.*

"Upon an examination of the facts thus stated, and placing upon them that construction most favorable to the judgment of the court, we are of opinion that it cannot be sustained." (Italics supplied.) Louisiana Mut. Insurance Co. v. Tweed, supra, 7 Wall. 44, 51, 19 L.Ed. 65.

It will be noted that there was nothing in the opinion in the Tweed Case which amounted to express words of finding, such as we have here, followed by the separate awards for the three fishing rights, all stated as composing the sum total of the award.

On the contrary, in the Tweed Case the Supreme Court does not refuse to accept the opinion as findings because it is an opinion, but because "it states the evidence *and not the facts as found* from that evidence." Obviously, if the opinion in the Tweed Case also had stated in express words of finding the ultimate facts found from the evidence, it would have been held good also as making findings.

The Fleischman Case, 270 U.S. 349, 355, 46 S.Ct. 284, 287, 70 L.Ed. 624, cites and relies upon the Tweed Case. I have been unable to find a single Supreme Court decision where a trial court plainly and succinctly has found an ultimate fact, in a document which is also an opinion containing recitals of testimony and discussion of law, that has held that, because in one document, both findings and opinion cannot be held effective for their separate purposes. *The separation required is not of documents but of judicial action.* There

is nothing in the rules requiring separate papers.

Since both the parties are agreed in their briefs as to the facts, the solution is one plainly to be seen on those facts. The court may consider appellant's claim of "plain error," though it does not decide the claim in favor of the claimant.

It is apparent from the government's brief that it regards the decision including the nehu in the award as plain error. We have repeatedly held that we will consider the contention of the parties that plain error has been committed, even in the absence of an assignment of error. We do not deny such a consideration of such a contention of plain error because ultimately we decide it is not error. Columbia Heights Realty Co. v. Rudolph, 217 U.S. 547, 552, 30 S.Ct. 581, 584, 54 L.Ed. 877, 19 Ann.Cas. 854; Wiborg v. U. S., 163 U.S. 632, 658, 16 S.Ct. 1197, 41 L.Ed. 289.

The Columbia Heights Case came to the Supreme Court on error. There was no assignment of error at all, but the briefs of both parties argued as if there were. The court invoked its rule 21, like our rule 11, permitting notice of plain error. It examined the record to determine the appellant's contention "that the proceeding * * * was barred by the statute of limitations of three years." 217 U.S. 547, 554, 30 S.Ct. 581, 583, 54 L.Ed. 877, 19 Ann. Cas. 854. It devotes two pages to discussion of the claimed plain error and holds that it is plainly not error. The pertinent language is as follows:

"This protracted litigation is now before us, unaccompanied by an assignment of errors. * * *

"The court has, however, not regarded itself as under any absolute obligation to dismiss a writ of error or appeal because of the nonassignment of errors, as required by § 997 [Rev.St., 28 U.S.C.A. § 862] and section 1012, Rev.St., having, by its rules, reserved the option to notice a plain error, whether assigned or not. Ackley School Dist. v. Hall, 106 U.S. 428, 1 S. Ct. 417, 27 L.Ed. 237; Farrar v. Churchill, 135 U.S. 609, 614, 10 S.Ct. 771, 34 L.Ed. 246, 249; United States v. Pena, 175 U.S. 500, 502, 20 S.Ct. 165, 44 L.Ed. 251, 252.

"In the present case, the brief of counsel for the plaintiffs in error specifies ten alleged errors. The defendants in error have made no objection for failure to assign error under §§ 997 and 1012, Rev.

Stat., but have submitted the case upon the specifications of error in the brief of the plaintiffs in error. For these reasons, we shall exercise the option reserved under both rules 21 and 35, of examining the transcript, that we may be advised as to whether there has occurred any 'plain error' which obviously demands correction.

"1. Did the court err in allowing an assessment of benefits under the act of June 6, 1900? We think not."

(Here follow the two pages of discussion why the record shows they did not so "think.")

Columbia Heights Realty Co. v. Rudolph, 217 U.S. 547, 550, 551, 552, 30 S. Ct. 581, 54 L.Ed. 877, 19 Ann.Cas. 854.

Similarly Wiborg v. U. S., 163 U.S. 632, 658, 16 S.Ct. 1127, 41 L.Ed. 289, where there was no instruction to find for defendant, necessary for a review of the evidence to discover its sufficiency to sustain the judgment. There, the Supreme Court, under the claim of "plain error," examined the evidence and found sufficient to sustain the judgment of conviction of Captain Wiborg. It considered fully the *claim* of plain error and found no error.

I have referred to the case of Kelly v. U. S., supra, and other decisions in this circuit in which technicality of procedure has been found to frustrate the consideration of the merits. The Kelly Case was in equity, but the cases cited above are at law and show the same broad purpose to adjudicate the merits where both parties make it possible. The effect of such an attitude and emphasis on technicality transcends the frustration of justice to the individual suitor.

In the first place, it shows disregard of the duty to decide appeals on their merits, the only purpose for which courts are created, and commanded of us by the Congress when it stated: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, *without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties.*" (Italics supplied.) 28 U.S.C.A. § 391.

In the second place, concerning the sanctification of procedural steps, like assignments of error, over the merits, assignments cannot be deemed sanctified instruments of justice, when the new rules for appeals, proposed by the distinguished committee appointed by the Supreme Court, abolish them entirely.

Concerning these new rules, the Chief Justice has said: "It is manifest that the *goal* we seek is a simplified practice which will strip procedure of unnecessary forms, technicalities and distinctions, and permit the advance of causes to the decision of their merits *with a minimum of procedural encumbrances.*" (Italics supplied.)

If we are to approach the interpretation of the new rules in the spirit and with the attitude shown in raising these technical procedural questions and defeating the consideration of the merits, the new rules will soon become as technical as the old rules.

With regard to the holding on the merits of the claim that the Ii Estate was entitled to recover for the interference of the government with its fishing, prior to the condemnation, I concur with the decision in favor of the government.

I dissent from the refusal to entertain the question of the merits of the government's claim that the award for the total of the values of nehu, pua, and mullet, instead of one of them, or one-third of the catch, is in violation of the Hawaiian law.